USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
 :
SHIXUAN LUO, :
 :
                   Plaintiff, :
 : 23-cv-5878 (LJL)
        -v- :
 : MEMORANDUM AND
AIK RENOVATION INC., STEVE NEJASMIC, and : ORDER
MICHAEL RENOSIS, :
 :
                  Defendants. :
 :
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

    Defendants AIK Renovation Inc. ("AIK"), Steve Nejasmic ("Nejasmic"), and Michael Renosis ("Renosis" and, together with AIK and Nejasmic, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss counts one, two, three, four, five and six of the Amended Complaint against them. Dkt. No. 7. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

    The Court assumes the truth of the well-pleaded allegations of the Amended Complaint for purposes of this motion.

    AIK is a domestic construction corporation. Dkt. No. 3 ¶ 5. Nejasmic is the owner of AIK. *Id.* ¶ 6. Renosis is a senior project manager at AIK. *Id.* ¶ 7. Plaintiff Shixuan Luo ("Plaintiff") is an Asian male of Chinese national origin. *Id.* ¶ 4. Plaintiff was employed as a project manager at AIK from May 30, 2022 through July 9, 2022. *Id.* During that time, Renosis was his direct supervisor. *Id.* ¶¶ 7, 12.

Plaintiff alleges that he was the victim of discrimination on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). During Plaintiff's tenure at AIK, the company had approximately thirty full-time employees. *Id.* ¶ 5. The owner and majority of the managers were white Eastern-European immigrants or their descendants and the majority of the laborers were Latino. *Id.* Throughout his employment at AIK, Plaintiff did not see anyone of Asian or Chinese descent or nationality working as a manager or laborer at AIK. *Id.* ¶ 11.

Plaintiff was assigned to a worksite located in New York City. *Id.* ¶ 12. He was a competent manager, had good attendance, and fulfilled his responsibilities faithfully. *Id.* ¶¶ 4, 13. However, he alleges that Renosis made him feel unwelcome from the beginning. Plaintiff's requests for supplies were ignored and Renosis instructed him not to directly call or text Nejasmic but only to email him, even though Renosis knew that Nejasmic did not habitually check his emails; Plaintiff was prevented from obtaining the email or phone number of the project architect, project owner, and building manager when he needed to discuss some issues, despite requesting that information multiple times; and he was excluded from the biweekly construction meetings with the owner, architect, and building manager when issues at Plaintiff's worksite were being discussed. *Id.* ¶ 14. Plaintiff further alleges that when he brought a Chinese worker to the worksite to interview after having been permitted to look for new workers due to a shortage of labor, Renosis ignored the worker's presence for one-and-a-half hours and then refused to give him a job interview, belittling the worker for his Chinese national origin by saying "Who can f***ing compete with the f***ing Chinese!" *Id.* ¶ 15. Ultimately, the Chinese laborer did not get the job. *Id.*

On at least two occasions, Plaintiff also witnessed the leaders of AIK, including Nejasmic, Renosis, and the Operation Manager of AIK make vile and racially motivated jokes about the appearance of two recently laid-off workers, one of whom was Black and the other of whom was disabled.  *Id.* ¶ 16.  Plaintiff also heard the N-word used several times in reference to Black persons.  *Id.* ¶ 17.  He heard from a worker in his worksite that a leader at AIK referred to Plaintiff as "Sino," a racial slur, rather than his preferred name, Jeff.  *Id.*  Plaintiff alleges that the use of racial slurs was typical behavior at AIK and was not censured by any leader at AIK.  *Id.*

Plaintiff alleges he made complaints about several unreasonably disorganized deliveries.  *Id.* ¶ 19.  He also avers that he asked for safety protection equipment but those requests were delayed, ignored, or unsafely downgraded in quality.  *Id.* ¶¶ 18, 20.

On July 5, 2022, a little over a month into his employment, Plaintiff was temporarily assigned a different worksite at the location where Renosis was manager.  *Id.* ¶ 21.  When a worker at that site was injured, Plaintiff took a picture of the worker's injury.  *Id.*  Shortly after he took the picture, Plaintiff received a call from Nejasmic who inquired with displeasure why Plaintiff had photographed the injury.  *Id.*  On the morning of July 7, 2022, Plaintiff was called into the offices of AIK in Long Island City, where Nejasmic met him, blamed him for several issues in the project, and informed him that he would be replaced by a white person of non-Chinese nationality, whom Plaintiff had met only two days before.  *Id.* ¶ 22.  Nejasmic gave Plaintiff two weeks to look for a new job and did not consider the defense Plaintiff provided.  *Id.*  However, on the morning of Saturday, July 9, 2022, Nejasmic informed Plaintiff he would be fired immediately.  *Id.* ¶ 23.  AIK refused to pay Plaintiff his salary for the last complete work of his employment, from July 4, 2022 to July 8, 2022, even after he inquired to AIK about the payment.  *Id.* ¶ 24.

## PROCEDURAL HISTORY

Plaintiff initiated this case by filing a complaint *pro se* on July 10, 2023. Dkt. No 1. On July 13, 2023, he filed the Amended Complaint. Dkt. No. 3.[1] The Amended Complaint asserts claims for (1) employment discrimination based on race and national origin in violation of Title VII, *id.* ¶¶ 26–30; (2) hostile work environment in violation of Title VII, *id.* ¶¶ 31–34; (3) retaliation in violation of Title VII, *id.* ¶¶ 35–40; (4) discrimination based on race and national origin in violation of the NYSHRL and NYCHRL, *id.* ¶¶ 41–42; (5) hostile work environment in violation of the NYSHRL and NYCHRL, *id.* ¶¶ 43–44; (6) retaliation and adverse action in violation of the NYSHRL and NYCHRL, *id.* ¶¶ 45–46; and (7) violations of the Fair Labor Standards Act, New York State Labor Law, and Wage Theft Protection Act, based on AIK's failure to pay Plaintiff his salary for the last week of his employment, *id.* ¶¶ 47–48.

On August 25, 2023, Defendants filed this motion to dismiss, along with a supporting declaration and memorandum of law, seeking to dismiss all but Plaintiff's seventh cause of action. Dkt. Nos. 7–9. Plaintiff filed a memorandum of law in opposition to the motion on September 8, 2023, Dkt. No. 12, and Defendants filed a reply memorandum in further support of their motion on September 17, 2023, Dkt No. 13.

## DISCUSSION

Defendants argue that the Amended Complaint fails to state a claim for discrimination, hostile work environment, or retaliation under federal, state or city law. Dkt. No. 9 at 5–9. They contend that the Amended Complaint fails to allege facts giving rise to an inference of discrimination, *id.* at 6–7, and that the conduct which Plaintiff alleges is not sufficiently severe or pervasive to give rise to a hostile work environment claim, *id.* at 8–10. Defendants also argue

---

[1] Counsel appeared for Plaintiff on August 14, 2023. Dkt. No. 6.

4

that the retaliation claim should be dismissed because Plaintiff does not allege any protected activity that preceded the termination of his employment or any adverse action that postdated his termination.  *Id.* at 10–11.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest.  *See Abbas v. Dixon*, 40 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  This obligation "is especially true when dealing with *pro se* complaints alleging civil rights violations."  *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002); *see also Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001) (same).  However, while the Court construes *pro se* pleadings liberally, *pro se*

5

plaintiffs are not relieved of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).  "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'"  *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

Plaintiff's disparate treatment claim under Title VII and the NYSHRL "is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*."  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  "A plaintiff can establish a prima facie case of discrimination sufficient to survive a motion to dismiss '[i]f she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'"  *James v. Borough of Manhattan Cmty. Coll.*, 2021 WL 5567848, at *5 (S.D.N.Y. Nov. 29, 2021) (quoting *Littlejohn*, 795 F.3d at 311).  "At the motion to dismiss stage, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'"  *Id.* at *5 (quoting *Littlejohn*, 795 F.3d at 311).  "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Littlejohn*, 795 F.3d at 312.

To allege a discriminatory motive for the purposes of a NYCHRL discrimination claim, Plaintiff need only allege "that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision." *Heiden v. N.Y.C. Health & Hosps. Corp.*, 2023 WL 171888, at *31 (S.D.N.Y. Jan. 11, 2023) (citing *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012)); *see also Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021).

Plaintiff has pleaded sufficient facts to give rise to a claim for disparate treatment under federal, state, and city law. It is not disputed that Plaintiff, a male of Chinese descent, has sufficiently pleaded that he was a member of a protected class, that he was qualified for the position he sought, and that he suffered an adverse employment action. *See* Dkt. No. 13 at 1. His employment was terminated without the final two weeks of work he was promised. Dkt No. 3 ¶ 23. He also has alleged facts that plausibly support at least a minimal inference of discrimination. He alleges that his employment was terminated shortly after his immediate supervisor and one of the leaders of AIK made a derogatory and stereotyped comment about persons of Chinese descent and that he was replaced by a non-Chinese, white person. *Id.* ¶¶ 15, 17, 22. Plaintiff also alleges that Nejasmic, Renosis, and other AIK leaders—who are white Eastern-European immigrants or their descendants, *id.* ¶ 5—persistently made derogatory comments about persons who were not members of their ethnic group and who were members of minorities, *id.* ¶¶ 16–17. He further alleges that he was terminated without his employer even considering the defenses to the accusations that had been made against him. *Id.* ¶ 22. Those allegations, viewed collectively, are sufficient to give rise to an inference that the termination of Plaintiff's employment was based on his race and national origin. *See Yang v. Dep't of Educ. of the City of New York*, 2016 WL 4028131, at *7–8 (E.D.N.Y. July 26, 2016); *Downes v. Potter*,

2006 WL 2092479, at *12 (E.D.N.Y. July 26, 2006) (Bianco, J.); *see also Tolbert v. Smith*, 790 F.3d 427, 438 (2d Cir. 2015) ("Statements showing an employer's racial bias . . . are sufficient to support a prima facie case of discrimination.").

Plaintiff has also alleged sufficient facts to give rise to a claim for hostile work environment. A hostile work environment under federal and state law is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)) (internal quotations omitted); *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). A plaintiff must allege that the conduct "(1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that the plaintiff subjectively perceived as hostile or abusive; and (3) occurred because of the plaintiff's protected characteristic." *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at *5 (S.D.N.Y. May 5, 2020). "[A] plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (citation and quotation marks omitted). Objective severity "can be determined only by looking at all of the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Second Circuit has "cautioned against setting the bar too high" in the context of a motion to dismiss a claim of hostile workplace, and a plaintiff is therefore not required to recount

an exhaustive list of specific acts that contributed to a hostile workplace. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). However, minor incidents do not give rise to a finding of hostile work environment.

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), as the "NYCHRL is designed to be more lenient toward plaintiffs than its federal and state equivalents," *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 654 (E.D.N.Y. 2015). "Under the NYCHRL, a plaintiff claiming a hostile work environment need only demonstrate that he or she was treated 'less well than other employees' because of the relevant characteristic." *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 245 (2d Dep't 2021); *see Robinson v. De Niro*, 2023 WL 4862772, at *53 (S.D.N.Y. May 25, 2023). "The NYCHRL imposes liability for harassing conduct that does not qualify as 'severe or pervasive,' and 'questions of "severity" and "pervasiveness" are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability.'" *Espinosa v. Weill Cornell Med. Coll.*, 2021 WL 1062592, at *9 (S.D.N.Y. Mar. 19, 2021) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009)); *see also Richards v. Dep't of Educ. of City of New York*, 2022 WL 329226, at *20 (S.D.N.Y. Feb. 2, 2022). However, "[p]laintiff nonetheless has the burden of showing that the . . . conduct complained of was caused by a discriminatory motive; 'it is not enough that a plaintiff has an overbearing or obnoxious boss.'" *Dillon*, 85 F. Supp. 3d at 657 (quoting *Mihalik*, 715 F.3d at 110). In other words, "the NYCHRL is not a 'general civility code.'" *Mihalik*, 715 F.3d at 110 (quoting *Williams*, 872 N.Y.S.2d at 40). Yet "even a single comment may be actionable in the proper context." *Dillon*, 85 F. Supp. 3d at 654.

Defendants argue that Plaintiff's hostile work environment claims should be dismissed because, taking his allegations as true, he heard only one statement by Renosis in connection with another potential employee of Chinese origin and two racist jokes about persons of other races, and was told by an unidentified individual that a leader referred to him as "Sino."[2] Dkt. No. 9 at 9. Defendants thus would have the Court accept that Defendants' comments were too episodic such that, as a matter of law, they cannot suffice to make out a claim for hostile work environment. But just as whether a slur is sufficiently severe must be judged by its content, *see Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 23–24 (2d Cir. 2014); *see also Daniel v. T & M Prot. Res., LLC*, 689 F. App'x 1, 2 (2d Cir. 2017) (summary order); *Spencer v. Glob. Innovative Grp., LLC*, 2023 WL 6633860, at *10 (S.D.N.Y. Oct. 12, 2023), so too must the Court consider the duration of the plaintiff's employment, *see Orrego v. Knipfing*, 564 F. Supp. 3d 273, 286 (E.D.N.Y. 2021). Ethnic or racial slurs spread out over a period of years, while inexcusable, are different from slurs concentrated over a period of weeks. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997); *Sylla v. N.Y.C. Dep't of Educ.*, 2023 WL 2667072, at *8 (E.D.N.Y. Mar. 28, 2023); *Sherman*, 2020 WL 2136227 at *13. Plaintiff alleges that he was subject to a hostile work environment over a period of weeks—from May 30, 2022 when he began his employment to July 5, 2022, when AIK ended his employment. During that time period, Plaintiff heard: expletive-laden, racist remarks about a Chinese job applicant, Dkt. No. 3 ¶15; two racist jokes regarding terminated workers, *id.* ¶ 16; that an AIK leader had called him an anti-Chinese slur, *id.* ¶ 17; and "several" uses of the N-word in reference to Black people, *id.* Given the quantity, frequency, and severity of those remarks, Plaintiff has stated a hostile

---

[2] Defendants' argument elides Plaintiff's allegation that he "also heard the N-word slur several times in reference to Black people." Dkt. No. 3 ¶ 17.

work environment claim under Title VII and the NYSHRL. *See Levy v. NYC Health + Hosps.*, 2023 WL 2563116, at *8 (S.D.N.Y. Mar. 10, 2023); *Ewing v. Coca Cola Bottling Co. of N.Y.*, 2001 WL 767070, at *7 (S.D.N.Y. June 25, 2001). *A fortiori* he has also stated a hostile work environment claim under the more permissive NYCHRL. *See Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 84–85 (E.D.N.Y. 2020); *Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 48 (S.D.N.Y. 2009).

But Plaintiff has failed to state a claim for retaliation under federal, state, or city law. To plead a retaliation claim under Title VII, a plaintiff must allege "(1) the plaintiff participated in a 'protected activity' under [Title VII]; (2) 'the defendant knew of the protected activity'; (3) the defendant subjected the plaintiff to an 'adverse' action; and (4) a 'causal connection' existed 'between the protected activity' and the adverse action." *Samuels v. City of New York*, 2023 WL 5717892, at *11 (S.D.N.Y. Sept. 5, 2023) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). For retaliation claims under the "NYSHRL and NYCRHL, a plaintiff need only allege that 'she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Ward v. Cohen Media Publ'ns LLC*, 2023 WL 5353342, at *13 (S.D.N.Y. Aug. 21, 2023) (quoting *Mihalik*, 715 F.3d at 112); *see also Delo v. Paul Taylor Dance Found., Inc.*, 2023 WL 4883337, at *6 (S.D.N.Y. Aug. 1, 2023). Under federal, state, and city law alike, "[p]rotesting racial discrimination is a protected activity for purposes of these statutes, because the anti-discrimination statutes in question prohibit racial discrimination. But lodging general grievances about health or safety is not a protected activity for purposes of these discrimination laws." *Smalls v. Amazon.com Servs. LLC*, 2022 WL 356432, at *4 (E.D.N.Y. Feb. 7, 2022), *aff'd*, 2022 WL 17491259 (2d Cir. Dec. 8, 2022). According to the Amended Complaint,

11

Plaintiff made "complaints about several unreasonably disorganized deliveries" as well as inadequate safety equipment and practices to the Defendants. Dkt. No. 3 ¶¶ 18–20. However, "[c]omplaints concerning safety or general employment conditions are not protected activity under Title VII." *Molina v. Eagle Leasing Co.*, 2015 WL 5601845, at *4 (D. Conn. Sept. 22, 2015); *see also McCalman v. Partners in Care*, 2003 WL 22251334, at *6 (S.D.N.Y. Sept. 30, 2003). Such complaints are similarly insufficient to constitute a protected activity and therefore to give rise to a retaliation claim under the NYSHRL. *See Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 407 (S.D.N.Y. 2017) (explaining complaints "about the office's unsanitary condition" were insufficient to support a retaliation claim under the NYSHRL). "Even under the more lenient standard of the NYCHRL, Plaintiff has failed to establish engagement in a protected activity because he has not shown that his complaints could have put Defendants on notice that he was challenging discriminatory conduct." *Cano v. SEIU Loc. 32BJ*, 2023 WL 4830091, at *23 (S.D.N.Y. Apr. 17, 2023), *report and recommendation adopted*, 2023 WL 4784231 (S.D.N.Y. July 27, 2023); *see also Antonmarchi v. Consol. Edison Co. of New York*, 2008 WL 4444609, at *12 (S.D.N.Y. Sept. 29, 2008) (observing that raising "safety complaints is not an actionable protected activity" under the NYCHRL), *aff'd*, 514 F. App'x 33 (2d Cir. 2013).

Although Plaintiff ultimately filed an EEOC complaint against the Defendants, he did so *after* Defendants terminated him. Dkt. No. 3 at ECF p. 6. Plaintiff has not alleged that Defendants took any actions against him after his termination, so his EEOC complaint is similarly insufficient to support a retaliation claim under federal, state, or city law. *See Bonilla v. City of New York*, 2019 WL 6050757, at *16 (S.D.N.Y. Nov. 15, 2019) (concluding that adverse action that occurred before plaintiff filed a complaint could not have been in retaliation for protected activity); *see also Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 534 (S.D.N.Y.

2015) ("In order for an employment action to be retaliatory, it must occur after the protected activity for which an employee is being retaliated against."); *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("There can be no inference of retaliation where the protected activity occurred after the adverse employment action."). The Court therefore grants Defendants' motion to dismiss Plaintiff's retaliation claims.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to close Dkt. No. 7.

SO ORDERED.

Dated: November 22, 2023
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge