UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

SHIXUAN LUO,

                Plaintiff,

        -v-

AIK RENOVATION INC., STEVE NEJASMIC, and
MICHAEL RENOSIS,

                Defendants.

----------------------------------------------------------------------X

23-cv-5878 (LJL)

ORDER

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 12/11/24 |

**LEWIS J. LIMAN, United States District Judge:**

The Court has attached to this Order an updated voir dire use at for the trial in this case.

Question 33 has been added, the Questions for Individual Prospective Jurors have been revised,

and there are some changes to the closing instructions. Any objections should be raised by Friday,

December 13, 2024.

        SO ORDERED.

Dated: December 11, 2024
      New York, New York

_____
                  LEWIS J. LIMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
SHIXUAN LUO,                                              :
                                                          :
                        Plaintiff,                        :
                                                          :                23-cv-5878 (LJL)
            -v-                                           :
                                                          :
AIK RENOVATION INC., STEVE NEJASMIC, and                  :
MICHAEL RENOSIS,                                          :
                                                          :
                        Defendants.                       :
                                                          :
------------------------------------------------------------------------X


I.      **Introduction**

        Good morning, ladies and gentlemen.  Welcome to the United States District Court for the

Southern District of New York.  My name is Lewis Liman, and I will be presiding over the trial

for which we are here today to select a jury.  The case is a civil case entitled *Luo v. AIK Renovation.*

I expect the trial to be completed by the end of the week.  Those of you who are selected to serve

on the jury would then be excused from jury duty.  Those who are not selected to serve on the jury

in this case will be eligible to serve on one of the other trials for which jury selection is scheduled

to occur this week or next week.  I'll have more to say in a few moments about our schedule.

        Before we get started, I want to thank you for being here.  Your presence reflects your

serious commitment to your civic responsibilities.  I recognize that some of you are

inconvenienced by this service.  Jury service, however, is one of the highest and most important

duties of a citizen of the United States.  As the Supreme Court has recognized, "Jury service

preserves the democratic element of the law, as it guards the rights of the parties and ensures

continued acceptance of the laws by all of the people.  It affords ordinary citizens a valuable

opportunity to participate in a process of government, an experience fostering, one hopes, a respect for law.  Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process."  Our system of justice depends on you.

In a few minutes, if you have an extraordinary personal hardship that prevents you from serving in this case, you will have an opportunity to bring that to my attention.  I emphasize the word "extraordinary" because, as I said, I know that many of you have jobs or other places that you would rather be.  Unfortunately, it would be too hard for us to seat any jury at all if that were enough to excuse you from service.  The parties would not get a fair trial.  The hardship must be extraordinary for you to be excused.  So I appreciate your full cooperation.

Our purpose today is to make sure that we have a jury of citizens who will decide the issues in this case both fairly and impartially, and without any bias or prejudice in favor of, or against, either side.  In order to do that, I am going to ask certain questions of you—questions about your personal background, your family, your beliefs and experiences, and things of that nature.

You should understand that my questioning is not intended to pry into your lives, but to make sure that we select fair and impartial jurors, who can listen to the evidence with an open mind, and decide the issues in this case based only on the sworn testimony given in this courtroom, on whatever exhibits may be received in evidence, and on my instructions as to the law.  If at any time you feel uncomfortable for any reason in answering a question in front of other jurors, you should ask to have the issued discussed at sidebar, and I will try to discuss it with you in the presence of the attorneys only.

From your answers to my questions, I will be able to determine whether you should be excused "for cause"—that means, for a good reason.  Your answers will also allow the parties to make informed

3

use of their peremptory challenges.  Peremptory challenges give each party the right to excuse a certain number of jurors without giving any reason for doing so.

My questions to you, and your answers to them, are not evidence in this case, and you should not regard them as having any bearing in this case.  That said, it is very important that you not say in open court anything about the parties in this case or about any other matter that might affect the open-mindedness and fairness of the other jurors.  If there are any matters that you feel should be disclosed to me that might influence the other jurors, or any matters of a sensitive nature, you should ask to approach the bench to discuss them.  If you are excused, do not consider that a reflection on you personally.  This is all part of our system of justice, which is intended to provide all parties with a fair and impartial jury.  You will have done your duty by your presence here today and your readiness to serve if chosen.

## II.    Summary of the Case

Before we proceed, let me give you a brief summary of the case so that you have some sense of what it is about as we go through jury selection.  As I told you a moment ago, however, nothing I say is evidence.  The evidence that you will consider, if selected as a juror, will only come from the trial testimony of witnesses and from exhibits that are admitted into evidence.

This is a civil case.  As I mentioned earlier, the plaintiff in the case is Shixuan Luo, who is also known as Jeff Luo or Jefferson Rolls.  He is represented at trial by attorney Jing Shen Rolls of Pisgah Law  PLLC.  I would ask Mr. Luo and Ms. Rolls to now stand and face the jury venire.

The defendants are AIK Renovation, Inc., Steve Nejasmic and Micheal Renosis.  The defendants are represented at trial by Joshua Androphy of Morrison Tenenbaum PLLC. Would Mr. Nejasmic, Mr. Renosis, and Mr. Androphy now stand and face the jury venire.

I will now describe the allegations in this case in order to determine whether anything about this case may make it inappropriate for any of you to serve on the jury.

The Plaintiff, Shixuan Luo, was formerly employed as a project manager by AIK Renovation, which is a construction company.  Steve Nejasmic is the head of AIK Renovation, and Michael Renosis is an employee of AIK Renovation.  Luo claims that he was fired by AIK Renovation because of racial and national origin discrimination, and that Nejasmic and Renosis were part of that discrimination.  Defendants claim that they fired Luo because of his job performance.

### III.    Trial Schedule

Let me now tell you a little more about our schedule.  I expect to complete jury selection promptly today.  Trial will then begin.  We will sit every weekday until trial is over.  Counsel have advised me that they expect that this trial should be over by the end of this week.  I share that expectation.  Obviously, of course, it is possible that the trial could last a little longer, although that is unlikely.

Each day, the jury sits between 9:30 a.m. and lets out by about 5:00 p.m.  We try to make the experience as pleasant as possible.  Each day, a light breakfast is available before trial in the jury room at 8:30 a.m. for jurors who want it.  If you are selected to serve, I will encourage you to arrive early—or at least on time—so as not to delay the other jurors and participants in the trial. We will take a lunch break at around 1:00 p.m., and will take a short comfort breaks in the morning and in the afternoon.  Refreshments will be served at the mid-afternoon comfort break.  I make every effort to move trials along promptly and to make efficient use of your time.  As I said earlier, following the trial, you would be excused from your jury service.  Those of you who are not chosen to sit on this case will be eligible to be chosen to serve on the jury in a different case.

## IV.    Functions of the Judge and Jury

Finally, before I ask you specific questions, let me explain a few basic rules of law that must guide all of us during this trial. The function of the jury is to decide questions of fact. You who are chosen as jurors will be the only judges of the facts, and nothing the Court or the parties say or do may in any way intrude on your role as the exclusive fact-finders, based only on the evidence presented during the trial. When it comes to the law, as distinguished from the facts, however, you must take your instructions from the Court—that is, from me—and you are bound by those instructions. You may not substitute your own ideas of what the law is or what you think it should be. At the conclusion of the case, your job will be to determine whether the Plaintiff, Mr. Luo, has proven his claims by a preponderance of the evidence.

Let me add that, during the course of the trial, you will receive all the evidence you may properly consider to decide the case. Because of this, unless and until you are excused as a juror, you should not attempt to gather any information on your own relating to the case. Do not engage in any outside reading on this case; do not attempt to visit any places mentioned in the case; do not use the internet (including Google, Facebook, Twitter, or any other social media site or website) to learn anything about the case or anyone involved in the case. Do not do research of any nature or talk to anyone about the facts of the case or anyone involved in it.

The reason for these rules, as I am sure you understand, is that your decision in this case must be made solely on the evidence presented at the trial, or the lack of evidence.

## V.    Oath

We will now be handing out a questionnaire. I will go through it with you in just a moment, and I will read aloud each question. Please do not write on it just yet, and please do not read ahead.

But before we proceed any further, I will ask Mr. Fishman, my courtroom deputy, to administer the oath to all of you and then to fill the box.

*[Matt administers the oath.]*

## VI.    Filling the Box

We will be selecting 8 jurors for this case.  To do that, we need to qualify 14 prospective jurors; I will start by questioning the people in seat numbers 1–14, but I am confident that I will be questioning others beyond the 14.

Please listen carefully as I explain how we are going to proceed.

To begin, I am going to ask Juror Number One, [**Mr./Ms. _____**], each of the questions on the form, except for the questions on the last page under the heading "Questions for Individual Prospective Jurors," which we will get to later.  Even though I will be speaking directly to Juror Number One at that time, all of you sitting in this courtroom should be paying close attention and following along on your questionnaire.  If *your* answer to any question I ask to Juror Number One is "yes," please use your pen to circle the number of that question.  Do not write your name or make any other marks on the questionnaire; the only marks you should make are circles around the questions for which the answer is "yes."

When I finish going through the questions with Juror Number One, I will ask Juror Number Two, [**Mr./Ms. _____**], if [**he/she**] had any "yes" answers to any of the questions.  After doing so with Juror Number Two, I will do the same for Juror Number Three and so on down the line.  After Juror Number One, however, I will not re-read the questions aloud.  That is why it is very important that you listen carefully the first time and that, <u>*as I read each question*</u> to Juror Number One, you circle the number of the question if your answer is "yes."

To those individuals who are not among the first 14 people selected, you should also listen carefully to my questions and follow along, and also circle the number of any question to which you have a yes answer, because some of you may be called upon to take the place of a prospective juror who has been excused for cause. If you do end up taking a seat, I will ask you to quickly tell me if you have any affirmative, or yes, answers to the questions I have asked.

After each juror tells me whether they have any "yes" answers to these questions, I will ask that juror to tell me what those answers are. If there are matters that you believe you should disclose but that might tend to influence the other jurors, I will ask you to discuss them at sidebar at the bench. Also, if any questions call for personal information that you would rather not mention in front of everyone in court, simply tell me that you would like to approach the bench.

Once I have resolved all the challenges for cause, I will ask each prospective juror the background questions at the end of the questionnaire; and the parties will then exercise their peremptory challenges. 8 of the 14 will be left, and they will be our jurors.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHIXUAN LUO,

                              Plaintiff,

              -v-

AIK RENOVATION INC., STEVE NEJASMIC, and
MICHAEL RENOSIS,

                              Defendants.

---

23-cv-5878 (LJL)

LEWIS J. LIMAN, District Judge:

**<u>Questions for Jurors</u>**

**A.     General Questions**

1.  Do you have any ideas or prejudices that would prevent or hinder you from following my instructions as to the law?

2.  Do you have any doubt that you will be able to apply the law as I explain it, even if you disagree with the law or believe it should be different?

3.  Do you have any problem accepting any of the following instructions: (a) that this is a civil case, and not a criminal case; (b) that your decision must be based solely on the evidence presented at trial and my instructions to you concerning that evidence; (c) that you are to consider the quality, and not the quantity, of the evidence presented; and (d) that your personal feelings towards the parties or their counsel may not enter into your deliberations?

4.  Do you have any strong feelings about litigation in general that would make it difficult for you to be a fair and impartial juror in this case?

1

5. Do you have any doubt that you would be able to evaluate each witness's credibility without bias or prejudice?

6. Do you have any religious or ethical beliefs that would prevent you from passing judgment on another person or entity?

7. Do you believe that you have personal knowledge of the allegations in this case as I have described them to you?

8. Have you read or heard anything about this case through the media, the Internet, or any other source?

9. Is there anything about the nature of this case or the facts as I have described them that would cause you to be unable to render a fair and impartial verdict?

10. If you are chosen as a juror, do you know of any reason why you could not be fair and impartial?

**B.    Knowledge of the Trial Participants**

11. Have you, a family member, or a close friend ever had any dealings with the plaintiff, Shixuan Luo, also known as Jeff Luo or Jefferson Rolls?

12.  Plaintiff is represented at trial by attorney Jing Shen Rolls of Pisgah Law PLLC.   Do you know Ms. Rolls or anyone at Pisgah Law PLLC?

13. Have you, any member of your family, or any close friends of yours had any dealings with any of the defendants, AIK Renovation, Inc., Steve Nejasmic or Micheal Renosis?

14. Defendants are represented by attorney Joshua Androphy of Morrison Tenenbaum PLLC. Do you know Mr. Androphy or anyone at Morrison Tenenbaum PLLC?

15. Do you know any of the following people or are you familiar with the following places that you may hear from or about over the course of the trial?  Please listen carefully to the list.

    a.  Wojciech Burdy

    b.  Jaycon Townsend

    c.  Olympic Tower, located at 641 5th Ave, New York NY 10022

    d.  Heritage Bakery, located in Bryant Park

16. During this trial, you will also see me and members of the Court's staff, including Matt Fishman, the courtroom deputy, and my law clerks, Bo Malin-Mayor, Leah Samuel, and Miriam Bial.  Do you know any of us?

**C.    Personal Juror Experiences and Opinions**

*[For the questions in this section, if your answer is yes, please also answer this follow-up question:  Is there anything about that experience that would affect your ability to consider the evidence in this case with an open mind or to follow my instructions on the law?  If the matter is sensitive, it can be discussed at the bench.]*

17. Do you have any beliefs or feelings about civil lawsuits or the parties that bring them or defend them, that would prevent you from being fair and impartial in this case?

18. Do you have any opinions about lawsuits alleging discrimination generally that would affect your ability to render a fair and impartial verdict in this case?

19. Have you, a family member, or a close friend ever been personally involved in a lawsuit or investigation, including an internal investigation, alleging discrimination in the workplace, whether as a plaintiff, defendant, or witness?

20. Have you, a family member, or a close friend ever filed a complaint, or been subject to a complaint, in a workplace or with an agency or court, alleging discrimination?

3

21. Do you have a view that because a person has brought a lawsuit, those claims necessarily have merit?

22. Shixuan Luo—the plaintiff—is making claims against Defendants for violations of federal, city, and state antidiscrimination laws.  Do you have any feelings about this type of case that would make it difficult for you to be a fair and impartial juror in this case?

23. Do you believe that people shouldn't be able to bring lawsuits related to discrimination?

24. Plaintiff Shixuan Luo also makes a claim that the defendants did not fully pay wages that he was owed.  Have you ever been personally involved in a lawsuit about unpaid wages, whether as a plaintiff, defendant, or witness?

25. Do you have any feelings about claims for unpaid wages that would make it make it difficult for you to be a fair and impartial juror in this case?

26. Would you be unable to deliver a verdict for Plaintiff if he proves by a preponderance of the evidence that Defendants are liable and that he is entitled to damages?

27. Would you be unable to deliver a verdict for Defendants if Plaintiff fails to prove by preponderance of the evidence that Defendants are liable and that he is entitled to damages?

28. Have you ever worked in construction or owned a construction company?  If so, is there anything about that experience that would that make it difficult for you to be a fair and impartial juror in this case?

**D.    Other Questions**

29. Do you have any problems with your hearing or vision that would prevent you from giving full attention to all of the evidence at this trial?

30. Are you taking any medication, or do you have any medical condition, that would prevent you from giving full attention to all of the evidence at this trial?

31. Do you have any difficulty in reading or understanding English?

32. Do you know any of the other prospective jurors?

33. I will instruct you that you should absolutely avoid reading about this case or any participants in the case in the newspapers or on the Internet or listening to any radio or television reports or podcasts concerning the case until after it is over. Would you have difficulty following this instruction?

34. In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror. Do you have any extraordinary personal hardship that would prevent you from serving on this jury? Apart from any prior question, do you have the slightest doubt in your mind, for any reason whatsoever, that you will be able to serve on a jury in this case, to do so conscientiously, fairly and impartially, and to render a true and just verdict without fear, favor, sympathy, bias, or prejudice—and according to the law as it will be explained to you?

We are now going to turn to the page of the questionnaire headed: "Questions for Individual Prospective Jurors." We will go in order, from Juror #1 through Juror #14. When it is your turn, the microphone will be brought over to you. Please answer the questions on that page. It shouldn't take you very long. To help guide you as to the length and type of responses I have in mind, I will briefly illustrate by answering the questions myself using more or less the answers that I would give were I in your seat.

## <u>Questions for Individual Prospective Jurors</u>

(a)    How old are you?

(b)    In what counties have you lived in the past five years?

(c)    What is the highest level of schooling you have completed?

(d)    Who else lives in your home with you, if anyone?

(e)    Do you have any children? If so, what are their ages and what do they do?

(f)    What is your current employment status? If employed, how have you been employed in the past five years? If retired or unemployed, what was your most recent occupation?

(g)    What is your spouse's or partner's profession, business or occupation?

(h)    What newspapers, magazines or websites do you read?

(i)    What television programs do you watch?

(j)    Have you, or any of your relatives or close friends, ever been involved or appeared as a witness in any investigation by a federal or state grand jury, or by a Congressional or state legislative committee, licensing authority, or governmental agency?

(k)    Have you ever at any time served as a member of a grand jury, whether in the federal, state, or county courts?

(l)    Have you ever served as a juror in either the state or federal courts?

      i.    If so, when and in what court did you serve? What type of case?

      ii.    Without revealing the verdict, did the jury reach a verdict?

**E.    Wrap-Up**

From time to time during the trial it may become necessary for me to talk with the lawyers out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom—what we call a "sidebar"—or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of any conference outside your viewing is not to keep relevant information from you, but to decide certain procedural issues or how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Now, we will be going to sidebar to discuss the challenges that the parties may have.


*[Discuss and resolve for-cause challenges at sidebar.]*

*[Return to open court]*

Ladies and gentlemen, if you are not seated on the jury panel, I thank you for your service. Please return your questionnaire and retrieve your jury card from Mr. Fishman.  You can then return to the jury assembly room.

**VII.    Second Oath**

Mr. Fishman will now swear in the jury.

*[After the oath, the Court will give the following preliminary instructions to the jury.]*

**VIII.    Preliminary Instructions to the Jury**

Members of the jury, now that you have been sworn, I will give you some preliminary instructions to guide you in your participation in the trial.

### A.    Impartiality

To begin with, you are here to administer justice in this case according to the law and the evidence.  You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against the Plaintiff or the Defendant.

### B.    Finding the Facts

It will be your duty to find from the evidence what the facts are.  You and you alone will be the judges of the facts.  You will then have to apply those facts to the law as the Court will give it to you.  You must follow that law whether you agree with it or not.  Nothing the Court may say or do during the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be.

The evidence from which you will find the facts will consist of the testimony of witnesses, documents, and other things received into the record as exhibits, as well as any facts that the parties agree to or stipulate to or that the Court may instruct you to find.

Certain things are not evidence and must not be considered by you.  I will list them for you now:

First, statements, arguments, and questions by lawyers are not evidence.  Nor are my own statements to you evidence.  Only the answers given by the witnesses and the documents admitted as exhibits are evidence.

Second, objections to questions are not evidence.  The lawyers have an obligation to their clients to make an objection when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the Court's ruling on an objection.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are

instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Third, testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.

Finally, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

When you are determining the facts, keep in mind that there are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. The word "infer"—or the expression "to draw an inference"—means to find that a fact exists from proof of another fact. An inference is to be drawn only if it is logical and reasonable to do so, and not by speculation or guesswork.

In deciding whether to draw an inference, you must look at and consider all the facts in the light of reason, common sense, and experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury, to decide. Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more.

Here is an example to help you think about the difference between direct and circumstantial evidence. Assume that when you came into the Courthouse this morning the sun was shining and it was a nice day outdoors. Also assume that the courtroom blinds were drawn and you could not look outside. Assume further that, as you were sitting here, someone walked in with an umbrella that was dripping wet and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, and because no witness has testified that it is raining, you would have no direct evidence of the fact that it was raining. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact. I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence.

### C.    Credibility of Witnesses

One of your most important tasks as jurors is to evaluate the credibility of the witnesses who will testify before you—that is, how truthful and believable they are. Listen carefully as each witness testifies during both direct and cross examination and consider whether the witness is telling the truth. It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

Now, how do you decide what to believe and what not to believe? You are to listen to the witnesses, observe their testimony, and then decide as you would decide such questions in your own life. Did they know what they were talking about? Were they candid, honest, open, and truthful? Did they have a reason to falsify, exaggerate, or distort their testimony? Sometimes it is not what a witness says, but how he or she says it, that may give you a clue as to whether or not to accept that witness's version of an incident or an event as credible or believable.

In short, the way a witness testifies may play an important part in your reaching a judgment as to whether or not you can accept the witness's testimony as reliable.

10

### D.    Conduct as Jurors

Now, a few words about your conduct as jurors.

First, during the trial, you are not to discuss the case with anyone, nor are you to permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate, you simply are not to talk about this case with anyone—including your spouse or partner, family, or close friends. Do not even discuss the case with each other, your fellow jurors, until you begin your actual deliberations at the end of the trial. This includes posting anything on the Internet about the case, whether it be on personal blogs, Facebook, Twitter (or "X"), Instagram, LinkedIn, Youtube, TikTok, or any other form of social media. I know that many of you use cell phones, smart phones, social media, the Internet and other tools of technology. I emphasize that you must not use these tools to communicate electronically with anyone about the case in any way. This includes your family and friends.

Second, please do not, while you are serving as jurors in this trial, have any conversations with the parties, the attorneys, or any witnesses in this case, whether in the courtroom, in the hallways, in the elevators, outside, or anywhere else. By this, I mean not only to avoid talking about the case; do not talk at all, even to say "good morning" or to acknowledge any of these people. Someone seeing a juror in conversation with a party, lawyer, or witness might think that something improper was being discussed. To avoid even the appearance of impropriety, then, avoid any such contact or conversations. So I can tell you that, when the parties, lawyers, or witnesses pass you in the halls without even acknowledging your presence, they do not mean to be rude—they are simply following my instruction.

Third, do not read or listen to anything outside the courtroom that relates to this case in any way. Similarly, you are not to allow anyone to speak to you about this case. If you are approached

by anyone to speak about it, politely but firmly tell them that the judge has directed you not to do so. If any person seeks to contact you about this case, you are required to report the incident promptly to me by sending me a note through my courtroom deputy, Mr. Fishman.

Also, be sure that I am informed if any person that you know comes into this courtroom. This is a public trial so this could happen. But it is important that you do not hear from them what may have happened in the court while the jury was not present. If you should see a friend or relative come into court, please send me a note through Mr. Fishman at your first opportunity.

Fourth, do not try to do any research or make any investigation about the case, the participants in the case, or the issues presented by this case. For example, do not go onto the Internet tonight and research any matters relating to this case, or any of the parties or lawyers in this case. Do not call up your lawyer friends to ask about the type of matters at issue in this case.

Finally, do not form any opinion until all the evidence is in. A case can be presented only step by step, witness by witness, until all the evidence is before you. After the evidence is presented in the case, the parties will make closing statements and then I will give you your instructions on the law. It is only at that point that you will retire to deliberate. Keep an open mind until you start your deliberations at the end of the case.

### E.    Notes

You are permitted to take notes during the trial. Mr. Fishman has given each of you a notepad and pen. Please write your name on the cover of the pad. If you do take notes, please do so only in these pads.

Remember that any notes you take are for your use only, and they are only to be used as an aid for your memory. Your memory controls. If you do take notes, be careful not to get so involved in taking notes that you are not listening to the evidence.

12

If during the trial you cannot hear a witness or are confused about what a witness is saying, and you think the issue is very important, you may write down your question and, at the end of the witness's testimony, pass a note to my deputy Mr. Fishman.  I will then determine if your question should be asked.  Do not be offended or draw any implications if I do not ask your question.  There may be very good legal reasons why I do not. You should do this only if you cannot hear the witness or need clarification about what the witness is saying and you think the issue is very important.  In that way, I can perform my function in ensuring that the testimony is heard and in making sure that anything that needs to be clarified is clarified.  It is not my function or yours to determine the questions the witnesses should be asked.  That is the lawyers' job.  Your job is to listen carefully and consider what the witness is saying.  Do not speculate about why a question was not asked or what an answer would be to a question that was not asked.

Once again, do not draw any conclusions until I have given you your final instructions and the case has been submitted to you for deliberation.  Once you are in your deliberations, if there is a disagreement between one juror's notes and another juror's notes, or between one juror's notes and another juror's recollection, you can ask to have the court reporter read back the testimony, or to have that portion of the transcript sent to you, for it is the official court transcript that controls, not any particular juror's notes.

During the course of the trial, exhibits will be received into evidence.  They will be marked by exhibit number.  If there is an exhibit that you are particularly interested in seeing during your deliberations, write down the exhibit number.  At the end of trial, as you begin your deliberations, we will provide each of you with a list of all witnesses who testified during the trial, as well as a list of all exhibits that have been received in evidence.

13

### F.    Course of The Trial

We will now begin the trial.   As I told you earlier, the trial is expected to be done by this Friday.  Let me tell you about the trial day.  We will begin each day at 9:30 am.  Please be on time.  To help ensure that we start on time, please be in the jury room by 9:15 am at the latest so that we begin without delay.  I will add that a light breakfast will be available in the jury room each morning at 8:30 am.  You're not required to take us up on our hospitality, but in my experience, many jurors do.  The key thing is that nobody be late.  If any of you are late, we will have to wait, for we cannot start unless all of you are here, and all of us—myself, the lawyers, the parties, the witnesses, and your fellow jurors—will have to wait.  And if we lose 10 or 20 minutes every day, we may not be able to get the trial completed on time.  As to the rest of the trial day, we will take a lunch break around 1:00 p.m. and brief mid-morning and mid-afternoon comfort breaks with refreshments provided for you in the mid-afternoon.

Now, let me tell you how the trial will proceed.  First, we will have opening statements.  An attorney for the Plaintiff will make an opening statement.  Then an attorney for the Defendant will do so.  The opening statements are neither evidence nor argument; they are simply outlines of what the attorneys believe the evidence will show, and they are given to help you follow the evidence as it is presented.

After the opening statements, the Plaintiff will present his case.  The Plaintiff will call his witnesses, and after each witness testifies on direct examination, counsel for the Defendants will have an opportunity to cross-examine the witness.  After the cross examination, there may be a little bit of what we call re-direct and re-cross examination.

14

Following the Plaintiff's case, the Plaintiff will rest. The Defendants will then present their case. The defense witnesses will testify, and the Plaintiff will have the opportunity to cross-examine them.

After the evidence is completed and all sides have rested, the attorneys will give their summations. This is the opportunity for the lawyers to summarize the evidence and to give their closing arguments.

Following the summations, I will give you instructions on the law. You will then, finally, retire to deliberate on your verdict.

You have a tremendously important task as jurors. It is to determine the facts. You, and not the court, are the sole judge of the facts. The Constitution itself recognizes your unique role in our system of justice. So please, pay careful attention to the witnesses and evidence received at trial, as well as my instructions on the law.

We will now begin with counsel's opening statements.