UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/14/2025
```

-----------------------------------------------------------------------X
                                   :

SHIXUAN LUO,                    :

                Plaintiff,       :                            23-cv-5878 (LJL)

                     :

      -v-                 :                 MEMORANDUM AND

                     :                        ORDER

AIK RENOVATION INC., STEVE NEJASMIC, and   :
MICHAEL RENOSIS,         :

                     :

            Defendants.    :

                     X
-----------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

Plaintiff Shixuan Luo ("Luo" or "Plaintiff") moves, pursuant to Federal Rule of Civil

Procedure 59(a), for a new trial. Dkt. No. 72. For the following reasons, the motion for a new

trial is denied.

"A trial court should not grant a motion for a new trial unless it is 'convinced that the

jury . . . reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Ali

v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (quoting *Amato v. City of Saratoga Springs, N.Y.*, 170

F.3d 311, 314 (2d Cir. 1999)). "Unlike the Rule 50 standard for a directed verdict, the Rule 59

standard for a new trial may be met 'even if there is substantial evidence supporting the jury's

verdict,' and the Court is free to 'weigh the evidence [itself], and need not view it in the light

most favorable' to the non-movant." *Lin v. DJ's Int'l Buffet, Inc.*, 2024 WL 4315031, at *2

(E.D.N.Y. Sept. 27, 2024) (quoting *Anderson v. Aparicio*, 25 F. Supp. 3d 303, 309 (E.D.N.Y.

2014) (subsequent history omitted)). However, the Court should be reluctant to second-guess

jury determinations, and thus it should only grant a new trial when the verdict is "egregious."

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (citation omitted).

An error of law, if prejudicial, may be grounds for a new trial. *See* Charles Alan Wright & Arthur R. Miller, 11 Fed. Prac. & Proc. Civ. § 2805 (3d ed. 2024); *Nimely v. City of New York*, 414 F.3d 381, 400 (2d Cir. 2005). However, "a party may not use Rule 59 to cure a failure to comply with Rules 50 and 51." *Boateng v. BMW AG*, 753 F. Supp. 3d 215, 229 (E.D.N.Y. 2024); *see ING Glob. v. United Parcel Serv. Oasis Supply Corp*., 757 F.3d 92, 96–98 (2d Cir. 2014). "[T]o the extent any . . . motion for a new trial is premised to an objection to a jury instruction or verdict form, Fed. R. Civ. P. 51 requires the movant to have raised that objection before the jury retires, in order to preserve the objection." *Henry v. Dinelle*, 929 F. Supp. 2d 107, 114 (N.D.N.Y. 2013), *aff'd*, 557 F. App'x 20 (2d Cir. 2014). When a party has not preserved its objection to an instruction, the Court may consider only "plain error" that affects "substantial rights." Fed. R. Civ. P. 51(d)(2); *see Snyder v. New York State Educ. Dep't*, 486 F. App'x 176, 178 (2d Cir. 2012).

Plaintiff argues that a new trial should be granted because Defendants perjured themselves and the verdict was contrary to the weight of the evidence, Dkt. No. 71 at 6–12, because the jury charge was erroneous, *id.* at 13–21, and because the Court erred in dismissing Plaintiff's claim for unpaid salary, placing time limitations on Plaintiff's case, and allowing Defendants' attorney to improperly influence the jury, *id.* at 22–24. These arguments lack merit.

## I.    Weight of the Evidence

The jury verdict in favor of Defendants was not contrary to the weight of the evidence. Plaintiff argued that he was fired because of discrimination. Dkt. No. 74 at 32:13–21; Dkt. No. 69 at 261:9–263:11. However, Plaintiff produced little evidence to support this claim. Plaintiff was the first Chinese or Asian employee of AIK, where almost all the other managerial employees were White. Dkt. No. 74 at 74:10–14. And Plaintiff testified that he heard one AIK employee, Michael Renosis ("Renosis"), make a negative remark about Chinese employees on

one occasion.  Dkt. No. 74 at 85:8–16.  But Plaintiff was not fired by Renosis; he was fired by

AIK's President, Steve Nejasmic ("Nejasmic"), and Plaintiff's testimony that Renosis could have

been involved in his firing was entirely speculative.  *See* Dkt. No. 69 at 144:14–145:15.  Plaintiff

did not hear Nejasmic or any other employee besides Renosis make remarks about Chinese or

Asian employees.  Dkt. No. 69 at 138:18–25.  And Nejasmic hired Plaintiff several months

earlier with full knowledge he was Chinese, Dkt. No. 69 at 129:19–131:4, 157:24, supporting the

inference that when Nejasmic terminated Plaintiff's employment he did so for reasons other than

Plaintiff's race or national origin, *see Carlton v. Mystic Transp., Inc*., 202 F.3d 129, 137–38 (2d

Cir. 2000).

    Plaintiff's case relied primarily on the fact that prior to trial Nejasmic gave multiple,

arguably inconsistent, reasons for his termination.  At his deposition, Nejasmic testified that a

major reason for Luo's firing was that he allowed an employee under his supervision to work

while intoxicated, creating a safety issue.  Dkt. No. 37-8 at 25–28.  However, in a 45-minute

recording made by Plaintiff of the conversation in which Nejasmic terminated him, Nejasmic

stated Plaintiff was being terminated because his performance was not up to standards, and he

did not mention anything about the intoxicated employee.  *See* Dkt. No. 39 at 6–9 (describing the

recording).[1]

---

[1] The recording was played in its entirety at trial.  *See* Dkt. No. 74 at 104:1–25.  Although
Plaintiff argues that this was error, it was required by the rule of completeness in order to "ensure
fair and impartial understanding" of the portions of the recording he sought to admit.  *United
States v. Kopp*, 562 F.3d 141, 144 (2d Cir.2009); *see* Fed. R. Evid. 106.  Plaintiff additionally
objects to the Court's decision in response to a jury note stating: "[W]e would like to rehear the
portion of the audio that plaintiff's lawyer wanted to play initially before we heard the entire
audio. We recall that portion of the audio is approximately 90 seconds."  Dkt. No. 67 at 43:22–
44:2.  In response, the Court stated that "[Plaintiff's counsel] said that she wanted to play a
portion of the record, and there was an objection and under the Rule of Completeness, I indicated
that we would play the entire recording.  So there was no testimony about what Ms. Rolls wanted
to play, and in fact what Ms. Rolls wanted to play is really not relevant.  It's not relevant who

Although the jury was entitled to infer from this evidence that Nejasmic's explanations were false, and subsequently to "infer the ultimate fact of discrimination from the falsity of the employer's explanation," it was not required to do so. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000); *see id.* at 146 ("[T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff."). At trial, Nejasmic gave a consistent answer for why he terminated Plaintiff's employment. He testified that he fired Plaintiff primarily due to the employee safety issue and secondarily because he was making mistakes on the job. Dkt. No. 69 at 178:4–179:14, 194:5–8; 211:7–18. Nejasmic testified in detail regarding both of these explanations, and the Jury could have readily credited his testimony. *See id.* at 175:12–179:14 (testifying to specific details of the safety incident); 211:7–18 (identifying specific issues with Luo's performance).[2] Plaintiff's affirmative evidence that he was terminated due to his race or national origin was extremely slim. It was consistent

---

wants to do what. What is relevant is what the evidence shows." *Id.* at 45:24–46:6. The Court then instructed the jury that "[t]here is no evidence of what the plaintiff's lawyer wanted to play initially" and that therefore "we cannot answer your question." *Id.* at 47:13–20. The Court's statement that there was no evidence of what Plaintiff's counsel wanted to play is accurate, as the transcript reflects that Plaintiff's counsel stated that she would play "several portions" without specifying which portions, at which point the Court stated that in fact the entire recording would be played under the rule of completeness. Dkt. No. 74 at 102:6–104:25.

[2] Plaintiff argues that additional evidence which would have shown Nejasmic was lying was incorrectly held inadmissible by the Court. Dkt. No. 71 at 9–10. Plaintiff specifically references exhibits 5.2 and 5.8–5.10. *Id.* The only one of these which was actually ruled inadmissible was 5.2, which Plaintiff offered to show that he never received personal protective equipment, an issue unrelated to Nejasmic's credibility and irrelevant to this case. Dkt. No. 74 at 14:3–15, 99:1–11. Plaintiff's references to evidence of "[t]he location of the worksite" and "related dates" may refer to inconsistency between Nejasmic's statements that Plaintiff was fired around June 15, 2022, and evidence that Plaintiff was still working at Olympic Tower after that date and was not fired until July of 2022. *Compare id.* at 192:23–197:8 *with id.* at 60:8–64:10, 198:3–19. Plaintiff was not prevented from introducing evidence of this inconsistency at trial; Plaintiff introduced it via, for example, the recording, *id.* at 198:3–19, and Exhibits 5.6, 5.7, and 6.1.

with the weight of the evidence for the jury to find that Nejasmic fired Plaintiff for one or both of the reasons stated in his testimony, rather than due to his race or national origin.[3]

## II.  Erroneous Jury Charge

Plaintiff argues that the jury charge included insufficient instruction on pretext, did not clarify that the jury could find the employer liable if both discrimination and the employer's proffered reason motivated the termination, and contained several other errors.  Dkt. No. 71 at 13–21.  Plaintiff did not raise these issues before the jury was charged or retired, *see* Dkt. No. 67 at 40:6; Dkt. No. 69 at 218:6–7, and the issues are therefore waived, *see Jarvis v. Ford Motor Co.*, 283 F.3d 33, 57 (2d Cir. 2002).

In any case, the jury instruction clearly addressed Plaintiff's pretext argument by stating that "[i]f you believe that the reasons defendants gave for the decision to terminate Mr. Luo are false or incomplete, you may infer, but are not required to, that they acted as they did based on Mr. Luo's race or national origin."  Dkt. No. 67 at 22:5–8.  This is a correct statement of the law, and Plaintiff argued in summation that the jury could infer pretext from contradictory explanations.  Dkt. No. 69 at 262:2–10.  The instruction also specifically stated that "[i]f you find that Mr. Luo's race or national origin was a motivating factor in AIK Renovation's decision to terminate his employment, Mr. Luo is entitled to your verdict even if you find that AIK Renovation's conduct was also motivated by other lawful reasons."  Dkt. No. 67 at 19:10–16. Given that the jury instruction explicitly stated the legal principles for which Plaintiff advocates,

---

[3] Plaintiff characterizes his motion as based on the "certainty of perjury" in addition to the weight of the evidence.  Dkt. No. 71 at 6.  However, even on a motion for a new trial under Rule 59, "a court should rarely disturb a jury's evaluation of a witness's credibility."  *DLC Mgmt.*, 163 F.3d at 133.  The mere fact that a witness testified to different versions of events at different times does not mean the witness's current version is necessarily incredible, or that even if it is, it is necessarily cover for illegal discrimination.  *See Reeves*, 530 U.S. at 147–48.  For the reasons stated above, a reasonable juror in this case could easily have found Nejasmic's statements at trial credible in whole or in part.

it cannot be said that the instruction "mislead the jury as to the legal standard to be applied . . . such that the instructions would warrant a new trial." *Graham v. City of New York*, 128 F. Supp. 3d 681, 711 (E.D.N.Y. 2015); *see Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012).

## III.    Additional Alleged Errors

At the close of Plaintiff's case, the Court granted Defendant's motion to dismiss Plaintiff's claims under the New York Labor Law, which alleged in substance that Plaintiff was not paid for the last week of his employment, on the basis that no evidence showed the number of hours Plaintiff had worked that week and therefore the jury could not calculate damages.  Dkt. No. 69 at 153:25–154:6.  Plaintiff alleges that this is error because Plaintiff testified that he was not paid, there was serious prejudice to Plaintiff's rights, and the issue could have been repaired by allowing "late evidence."  Dkt. No. 71 at 22–23.  However, Plaintiff "had ample opportunity to provide evidence during the trial."  *Ammar v. United States*, 342 F.3d 133, 141 (2d Cir. 2003).  Plaintiff never requested to reopen the record and submit additional evidence, instead arguing that the lack of evidence on damages was a "technical issue" which should be "forgivable."  Dkt. No. 69 at 154:16–155:13.[4]  This is incorrect.  When "there is only speculation to establish what hours the[] plaintiff[] worked," there is no way for a jury to determine whether the plaintiff was underpaid for the work he performed, so judgment must be granted for the defendant as a matter of law.  *Grochowski v. Phoenix Const.*, 318 F.3d 80, 88–89 (2d Cir. 2003).

---

[4] In any case, a court is not required to reopen the record for the presentation of new evidence after Plaintiff learns the strategy of the opposing party or the rulings of the Court, and indeed doing so would have provided Plaintiff with an unfair advantage.  *See Ammar*, 342 F.3d at 141; *Zenith Radio Corp. v. Hazeltine Rsch., Inc*., 401 U.S. 321, 332 (1971) (noting "the value of avoiding reopening a trial to litigate matters that [a party] had had an opportunity, but neglected, to litigate").

Plaintiff argues that he was unfairly prejudiced by the time limits placed on the presentation of his case by the Court. Dkt. No. 71 at 10–11. However, a trial court has broad discretion to regulate "the course and scope of examination of witnesses." *United States v. Local 1804–1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1095 (2d Cir.1995). This includes the ability to set time limits, especially when examination is "prolonged" and involves "objectionable lines of inquiry." *Cruz v. New York City Dep't of Educ.*, 376 F. App'x 82, 84 (2d Cir. 2010); *see Evans v. Port Auth. of New York & New Jersey*, 246 F. Supp. 2d 343, 351 & n.49 (S.D.N.Y. 2003) (collecting cases). It is also not clear how the time limit set by the Court on Plaintiff's case could have prejudiced counsel in "sufficiently addressing the Defendants' credibility issues before the jury," as Plaintiff claims. Dkt. No. 71 at 23. Those issues would be and were properly addressed on cross-examination of Defendants.[5]

Finally, Plaintiff argues that Defendant's attorney improperly influenced the jury in his opening by suggesting that Plaintiff fabricated his story about Renosis making a racist comment. Dkt. No. 71 at 24; *see* Dkt. No. 74:39:1–3. A new trial is warranted for attorney misconduct only "when the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992). Here, defense counsel's statement that Plaintiff fabricated his story was proper comment on what he expected the evidence to show, and certainly did not "so infect a trial with undue prejudice or passion as to require reversal." *Johnson v. City of New York*, 593 F. Supp. 3d 58, 72 (S.D.N.Y. 2022) (quoting *Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 124 (2d

---

[5] The Court also imposed a time limit on Plaintiff's cross-examination of Nejasmic. *See* Dkt. No. 69 at 209:2–4, 213:13–22. However, the motion specifically states that the time limit placed on Plaintiff's case was the cause of counsel not sufficiently addressing the Defendants' credibility issues. Dkt. No. 71 at 10–11, 23.

Cir. 2005)); *see McIntyre v. Rochester Police Dep't*, 830 F. App'x 694, 695 (2d Cir. 2020) (holding that comments in opening and closing "about the credibility of the defendants and the plaintiff" did not require a new trial); *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 430 (S.D.N.Y. 2008) ("When plaintiffs counsel's comments are viewed in context, it is clear that he merely sought to discredit defendants' [witness,] . . . which he is entitled to do.").

## CONCLUSION

The motion for a new trial is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 72.

SO ORDERED.

Dated: April 14, 2025
        New York, New York
                                                    _____
                                                        LEWIS J. LIMAN
                                                    United States District Judge